**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDWARD GARITY, Individually, and on Behalf of Others Similarly Situated,<br><br>              Plaintiff,<br><br>     vs.<br><br>TETRAPHASE PHARMACEUTICALS, INC., GUY MACDONALD, JACQUES DUMAS, PIPER JAFFRAY & CO., BMO CAPITAL MARKETS CORP., STIFEL, NICOLAUS & COMPANY, INCORPORATED, SUNTRUST ROBINSON HUMPHREY & CO., LLC, H.C. WAINWRIGHT & CO., LLC,<br><br>              Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Edward Garity by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Tetraphase Pharmaceuticals, Inc. ("Tetraphase" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Tetraphase; and (c) review of other publicly available information concerning Tetraphase.

## I.    NATURE OF THE ACTION AND OVERVIEW

1.    This is a class action on behalf of persons and entities that: a) acquired Tetraphase securities pursuant and/or traceable to the Company's false and/or misleading registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's July 2017 secondary public offering ("SPO" or the "Offering"); and/or, b) acquired Tetraphase securities between March 8, 2017 and February 13, 2018, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants, under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.    For several years, Tetraphase has been developing eravacycline, its lead product candidate.  Eravacycline is a fully synthetic antibiotic for use in treatment of multidrug-resistant infections, including gram-negative infections in patients.

3.    Tetraphase has conducted a global phase 3 test for eravacycline, which it called IGNITE (Investigating Gram-Negative Infections Treated with Eravacycline). The IGNITE1 trial compared eravacycline with ertapenem for the treatment of complicated intra-abdominal infections (cIAI), which met the primary endpoint of statistical non-inferiority.   IGNITE4

1

followed up on the IGNITE1 to test the efficacy, safety and pharmacokinetics of twice-daily IV treatment for cIAI.

4.     IGNITE3, on the other hand, was designed to test the efficacy and safety of once-daily intravenous eravacycline for the treatment of complicated urinary tract infections (cUTI).

5.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) Tetraphase was increasing the patient enrollment in its IGNITE3 trial from 1,000 patients to 1,200 patients to meet the trial's primary endpoints (within the 10% non-inferiority margin); (2) The enrollment of more patients in the trial indicated that the existing population was inadequate to meet the trial's primary endpoints; and (3) that, as a result of the foregoing, Defendants' statements about ACADIA's business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

## II.   JURISDICTION AND VENUE

6.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

8.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), Section 22 of the Securities Act (15 U.S.C. § 77v) and Section 27 of the Exchange Act (15 U.S.C. §78aa).  Many

of the false and misleading statements and omissions were made in or issued from this District, notably all the Underwriter Defendants (defined below) maintain offices and substantial operations in this District, and many of the acts and transactions giving rise to the violations of law complained of occurred in this District.

## III.    PARTIES

9.    Plaintiff Edward Garity purchased Tetraphase common stock during the Class Period as described in the Certification attached hereto and incorporated herein by reference and suffered damages thereon.

10.    Defendant Tetraphase is a clinical-stage biopharmaceutical company that develops antibiotics for serious and life-threatening multidrug-resistant infections. Tetraphase's principal executive offices are located at 480 Arsenal Way in Watertown, Massachusetts.

11.    Defendant Guy Macdonald is, and was throughout the Class Period, Tetraphase's Chief Executive Officer ("CEO"), President and a member of the Company's Board of Directors, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

12.    Defendant Jacques Dumas is, and was throughout the Class Period, Tetraphase's Chief Science Officer ("CSO").

13.    Defendants Macdonald and Dumas are collectively referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Tetraphase's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after,

their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

14.     Defendant Piper Jaffray & Co. ("Piper") served as an underwriter for the Company's SPO.

15.     Defendant BMO Capital Markets Corp. ("BMO") served as an underwriter for the Company's SPO.

16.     Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") served as an underwriter for the Company's SPO.

17.     Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust") served as an underwriter for the Company's SPO.

18.     Defendant H.C. Wainwright & Co., LLC ("H.C. Wainwright") served as an underwriter for the Company's SPO.

19.     Defendants Piper, BMO, Stifel, SunTrust and H.C. Wainwright are collectively referred to hereinafter as the "Underwriter Defendants."

## IV.     BACKGROUND TO THE CLASS PERIOD

20.     Tetraphase is a clinical-stage biopharmaceutical company that attempts to use proprietary chemistry technology to create and commercialize novel antibiotics for serious and life-threatening multidrug-resistant, or MDR, infections.

4

21.     In July of 2017, the Company filed with the SEC two Amended Prospectuses for the SPO on Form 424B5, these prospectus form part of the SPO Registration Statement. In the SPO, the Company sold 10,000,000 shares at $6.50 per share, for net proceeds of $61,100,000 after the underwriting discount. The proceeds from the SPO were purportedly to be used for the IGNITE3 clinical trial of eravacycline and further development of eravacycline, pre-commercialization and launch related activities for eravacycline, for development of the Company's other product candidates, and for working capital and other general corporate purposes.

22.     Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

## V.     DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS

23.     The Class Period starts on March 8, 2017.  On March 8, 2017, Tetraphase reported its financial results for the fourth quarter and year-ended December 31, 2016.  The March 8, 2017 press release highlighted Tetraphase's initiation of its phase 3 IGNITE3 clinical trial.  Tetraphase reported that enrollment was proceeding well, stating as follows:

> IGNITE3 is designed to evaluate IV eravacycline compared to ertapenem and is expected to enroll approximately 1,000 patients. The primary analysis will be conducted using a 10% non-inferiority margin.  Assuming a positive outcome, the IGNITE3 clinical data are expected to support a supplemental New Drug Application (sNDA) submission for IV eravacycline in cUTI.

24.     On March 13, 2017, the Company filed its Form 10-K with the SEC.  In pertinent part, the March 13, 2017 Form 10-K stated as follows:

> In January 2017, we initiated IGNITE3, a randomized, multi-center, double-blind, phase 3 clinical trial evaluating the efficacy and safety of once-daily IV eravacycline (1.5mg/kg every 24

hours) compared to ertapenem (1g every 24 hours), the control therapy in this trial, for the treatment of cUTI. IGNITE3 is expected to enroll approximately 1,000 adult patients, who will be randomized 1:1 to receive eravacycline or ertapenem for a minimum of five days, and will then be eligible to switch to an approved oral antibiotic. The co-primary endpoints of responder rate (a combination of clinical cure rate and microbiological response) in the micro-ITT population at the end-of-IV treatment visit and at the test-of-cure, or TOC, visit (Day 5-10 post therapy) will be evaluated using a 10% non-inferiority margin.

**\*\*\*\***

We are also conducting our IGNITE3 clinical trial of the IV formulation of eravacycline in patients with cUTI. If IGNITE3 is successful, we plan to use the results from IGNITE3 to support submission of a supplemental new drug application, or sNDA, for IV eravacycline for the treatment of cUTI, assuming approval first of IV eravacycline for the treatment of cIAI.

**\*\*\*\***

Maximize the commercial potential of eravacycline . If eravacycline is approved, we intend to directly commercialize eravacycline in the United States with a targeted hospital sales force and to commercialize eravacycline outside the United States through collaboration arrangements. We believe that eravacycline's potent coverage of multidrug-resistant Gram-negative bacteria and other multidrug-resistant bacteria, will allow it to be used to treat patients successfully in hospitals, emergency rooms and out-patient clinic settings.

25.    The March 13, 2017 Form 10-K presented the eravacycline phase 3 IGNITE3 study design in the following chart:

6



26.    Further, the March 13, 2017 Form 10-K also stated as follows:

> In January 2017, we initiated dosing in IGNITE3, a phase 3 randomized, double-blind, double-dummy, multi-center, prospective study that is designed to assess the efficacy, safety and pharmacokinetics of once-daily IV eravacycline (1.5mg/kg every 24 hours) compared to ertapenem (1g every 24 hours), the control therapy in this trial, for the treatment of cUTI. The study is expected to enroll approximately 1,000 adult patients. Patients will be randomized 1:1 to receive eravacycline or ertapenem for a minimum of 5 days, and will then be eligible for transition to an approved oral agent. The co-primary endpoints of responder rate (a combination of clinical cure and microbiological success) in the micro-ITT population at the end-of-IV treatment visit and at the TOC visit (Day 5-10 post therapy) will be evaluated using a 10% non-inferiority margin.

27.    The statements referenced above in ¶¶ 23-26 were each materially false and misleading because they failed to disclose and misrepresented the following adverse facts known by Defendants during the Class Period:

(a)    Tetraphase was increasing the patient enrollment in its IGNITE3 trial from 1,000 patients to 1,200 patients to meet the trial's primary endpoints (within the 10% non-inferiority margin);

7

(b)      The enrollment of more patients in the trial indicated that the existing population was inadequate to meet the trial's primary endpoints; and

(c)      As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects with respect to the IGNITE3 trial were false and misleading and/or lacked a reasonable basis.

28.      On May 4, 2017, Tetraphase issued a press release announcing its first quarter 2017 financial results for the reporting period ended March 31, 2017.  In pertinent part, the May 4, 2017 press release quoted Defendant Macdonald as follows:

> We have continued to make significant advancements across all of our development programs, particularly for IV eravacycline with the early completion of enrollment of IGNITE4 in complicated intra-abdominal infections (cIAI), and the initiation of IGNITE3 in complicated urinary tract infections (cUTI), for which enrollment is progressing well[.]

29.      The May 4, 2017 press release also discussed the IGNITE3 trial as follows:

> Initiated the phase 3 IGNITE3 clinical trial of IV eravacycline in patients with cUTI.   IGNITE3 is designed to evaluate IV eravacycline compared to ertapenem and is expected to enroll approximately 1,000 patients.   The primary analysis will be conducted using a 10% non-inferiority margin.   Assuming a positive outcome, the IGNITE3 clinical data are expected to support a supplemental NDA (sNDA) submission for IV eravacycline in cUTI.

30.      On July 26, 2017, Tetraphase announced that it had commenced an underwritten offering of shares of its common stock.  All of the shares of common stock to be sold in the offering are offered by Tetraphase.

31.      In its Prospectus Supplement dated July 27, 2017, Tetraphase described its offering of 10,000,000 shares of its common stock for $6.50 per share.  Tetraphase stated that the proceeds from this offering, after deducting underwriting discounts and commissions and

estimated offering expenses payable by us, will be approximately $60.9 million, or approximately $70.1 million if the underwriters exercise their option to purchase additional shares, and that the net proceeds from this offering would be used to fund the Company's IGNITE3 clinical trial of eravacycline and further development of eravacycline.

32.     In pertinent part, the July 27, 2017 Prospectus Supplement stated as follows:

> We are also developing eravacycline for the treatment of cUTI. In January 2017, we initiated IGNITE3, a randomized, multi-center, double-blind, phase 3 clinical trial evaluating the efficacy and safety of once-daily IV eravacycline (1.5mg/kg every 24 hours) compared to ertapenem (1g every 24 hours), the control therapy in this trial, for the treatment of cUTI. IGNITE3 is expected to enroll approximately 1,000 adult patients, who will be randomized 1:1 to receive eravacycline or ertapenem for a minimum of five days, and will then be eligible to switch to an oral antibiotic. The co-primary endpoints of responder rate (a combination of clinical cure rate and microbiological success) in the micro-ITT population at the end-of-IV treatment visit and at the TOC visit (Day 14-17 after randomization) will be evaluated using a 10% non-inferiority margin. We expect to complete enrollment in IGNITE3 early in the fourth quarter of 2017. If IGNITE3 is successful, we plan to use the results from IGNITE3 to support submission of a supplemental new drug application, or sNDA, for IV eravacycline for the treatment of cUTI, assuming approval first of IV eravacycline for the treatment of cIAI.
>
> ****
>
> In January 2017, we initiated IGNITE3, a randomized, multi-center, double-blind, phase 3 clinical trial evaluating the efficacy and safety of once-daily IV eravacycline compared to ertapenem, the control therapy in this trial, for the treatment of complicated urinary tract infections, or cUTI. IGNITE3 is expected to enroll approximately 1,000 adult patients, who will be randomized 1:1 to receive eravacycline or ertapenem for a minimum of five days, and will then be eligible to switch to an oral antibiotic. The co-primary endpoints of responder rate (a combination of clinical cure rate and microbiological response) in the micro-ITT population at the end-of-IV treatment visit and at the TOC visit (Day 5-10 post therapy) will be evaluated using a 10% non-inferiority margin.

33.     On August 2, 2017, Tetraphase released its financial results from the second

quarter ended June 30, 2017.  In pertinent part, the August 2, 2017 press release quoted

Defendant Macdonald as follows:

> We are pleased to see enrollment progressing well in the phase 3
> IGNITE3 study in complicated urinary tract infections (cUTI), and
> we look forward to completing enrollment in that study early in the
> fourth quarter of 2017. If successful, the IGNITE3 data will
> support a future supplemental NDA filing for once-daily IV
> eravacycline in cUTI.

34.    On September 11, 2017, Tetraphase issued a press release announcing that it had

completed enrollment of IGNITE3 Phase 3 clinical trial of eravacycline in complicated urinary

tract infections and stated that it expected to report top-line data from this trial in the first quarter

of 2018.

35.    In pertinent part, the September 11, 2017 press release quoted Defendant

Macdonald as follows:

> We have now completed enrollment of approximately 1,200
> patients in IGNITE3, well ahead of schedule, and we expect top-
> line data from IGNITE3 to be available during the first quarter of
> 2018[.]
>
> In parallel, we are working to prepare a New Drug Application
> (NDA) for twice-daily IV eravacycline in complicated intra-
> abdominal infections, which will be comprised of data from the
> successfully completed phase 3 IGNITE1 and IGNITE4 clinical
> trials.  Assuming a positive outcome from IGNITE3 and approval
> of IV eravacycline for the treatment of cIAI, we plan to file a
> supplemental NDA (sNDA) for IV eravacycline as a new treatment
> for patients with cUTI.
>
> With high rates of quinolone resistance in hospitals in the U.S. and
> around the world, we believe a once-daily IV therapy for cUTI
> could be an important new treatment option for patients who are
> eligible for completing their course of antibiotics in an outpatient
> setting.
>
> About IGNITE3
>
> IGNITE3 is a randomized, multi-center, double-blind, phase 3
> clinical trial evaluating the efficacy and safety of once-daily IV

eravacycline (1.5mg/kg every 24 hours) compared to ertapenem (1g every 24 hours) for the treatment of cUTI. IGNITE3 enrolled approximately 1,200 patients who were randomized 1:1 to receive eravacycline or ertapenem for a minimum of 5 days, and then were eligible for transition to an appropriate approved oral agent. The co-primary endpoints of responder rate (a combination of clinical cure and microbiological success) in the microbiological intent-to-treat (micro-ITT) population at the end-of-IV treatment visit and at the test-of-cure visit (Day 5-10 post therapy) will be evaluated using a 10% non-inferiority margin.

****

Tetraphase is also currently conducting IGNITE3, an additional phase 3 trial evaluating once-daily IV eravacycline in patients with cUTI and, assuming a positive outcome from IGNITE3 and approval of IV eravacycline for the treatment of cIAI, the Company plans to use the results from IGNITE3 to support a supplemental NDA submission for eravacycline in cUTI. In parallel, Tetraphase is continuing its efforts to develop an oral dose formulation of eravacycline. A phase 1 clinical program is ongoing which is designed to evaluate and optimize the oral dosing regimen for eravacycline.

36. On November 2, 2017, Tetraphase released its financial results for the third quarter 2017 ended September 30, 2017. In pertinent part, the November 2, 2017 press release quoted Defendant Macdonald as follows:

For IV eravacycline in complicated urinary tract infections (cUTI), we completed enrollment in the phase 3 IGNITE3 trial, and expect top-line data to be available in the first quarter of 2018. Assuming a positive IGNITE3 outcome and upon approval of IV eravacycline in cIAI, we plan to file a supplemental NDA (sNDA) for cUTI.

Lastly, we recently announced an update on our oral eravacycline development program, including positive phase 1 results in healthy volunteers, and look forward to moving our optimized IV-to-oral regimen into a phase 2 clinical trial in cUTI patients in the first half of 2018[.]

With a strengthened balance sheet following a successful public offering in the third quarter, we will be able to execute on these important objectives for the eravacycline program and through our anticipated commercial launch.

11

37.     On January 25, 2018, Tetraphase announced its plan to raise $150 million and filed a Form S-3 with the SEC, which was deemed effective February 5, 2018. In pertinent part, the January 25, 2018 Form S-3 stated as follows:

> We are also developing eravacycline for the treatment of complicated urinary tract infections, or cUTI. In January 2017, we initiated IGNITE3, a randomized, multi-center, double-blind, phase 3 clinical trial evaluating the efficacy and safety of once-daily IV eravacycline compared to ertapenem, the control therapy in this trial, for the treatment of cUTI. We completed enrollment in IGNITE3 in September 2017 and expect to report top-line data from this trial in the first quarter of 2018. If IGNITE3 is successful, we plan to use the results from IGNITE3 to support submission of a supplemental new drug application, or sNDA, for IV eravacycline for the treatment of cUTI, assuming approval first of IV eravacycline for the treatment of cIAI.

38.     The statements referenced above in ¶¶ 28-37 were each materially false and misleading because they failed to disclose and misrepresented the following adverse facts known by Defendants during the Class Period:

(a)     Tetraphase had increased the patient enrollment in its IGNITE3 trial from 1,000 patients to 1,200 patients to meet the trial's primary endpoints (within the 10% non-inferiority margin);

(b)     The enrollment of more patients in the trial indicated that the existing patient population was inadequate to meet the trial's primary endpoints; and

(c)     As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects with respect to the IGNITE3 trial were false and misleading and/or lacked a reasonable basis.

## VI.     THE TRUTH IS REVEALED

39.     On February 13, 2018, Tetraphase announced top-line results from its IGNITE3 Phase 3 clinical trial of eravacyline in complicated urinary tract infection and that eravacycline

did not achieve co-primary endpoints in cUTI trial.  In pertinent part, the February 13, 2018

press release stated as follows:

> Tetraphase Pharmaceuticals, Inc. (NASDAQ:TTPH), a biopharmaceutical company focused on developing and commercializing novel antibiotics to treat life-threatening multidrug-resistant (MDR) infections, today announced that its IGNITE3 clinical trial evaluating the efficacy and safety of once-daily intravenous (IV) eravacycline compared to ertapenem for the treatment of patients with complicated urinary tract infections (cUTI) did not achieve statistical non-inferiority of eravacycline to ertapenem. The study failed to meet the co-primary efficacy endpoints of responder rate (a combination of clinical cure and microbiological success) in the microbiological intent-to-treat (micro-ITT) population at the end-of-IV (EOI) treatment visit and at the test-of-cure (TOC) visit, which were evaluated using a 10% non-inferiority margin.  Eravacycline was well tolerated in IGNITE3, with a safety profile consistent with prior studies.

> ****

> The phase 3 IGNITE3 clinical trial enrolled 1,205 patients who were randomized 1:1 to receive IV eravacycline (1.5mg/kg every 24 hours) or ertapenem (1g every 24 hours) for a minimum of 5 days, and then were eligible for transition to an appropriate approved oral agent. The co-primary endpoints of responder rate (a combination of clinical cure and microbiological success) in the microbiological intent-to-treat (micro-ITT) population at the EOI visit and at the TOC visit (Day 5-10 post therapy) were evaluated using a 10% non-inferiority margin. Responder rates in the micro-ITT population at the EOI visit were 84.8% and 94.8% for eravacycline (n=363/428) and ertapenem (n=382/403), respectively (-10% CI: -14.1%, -6.0%).  Responder rates at the TOC visit were 68.5% and 74.9% for eravacycline (n=293/428) and ertapenem (n=302/403), respectively (-6.5% CI: -12.6%, -0.3%).

> ****

IGNITE3 was a phase 3 randomized, multi-center, double-blind, clinical trial evaluating the efficacy and safety of once-daily IV eravacycline (1.5mg/kg every 24 hours) compared to ertapenem (1g every 24 hours) for the treatment of cUTI. IGNITE3 enrolled approximately 1,200 patients who were randomized 1:1 to receive eravacycline or ertapenem for a minimum of 5 days, and then were eligible for transition to an appropriate approved oral agent. The co-primary endpoints of responder rate (a combination of clinical cure and microbiological success) in the microbiological intent-to-treat (micro-ITT) population at the end-of-IV treatment visit and at the test-of-cure visit (Day 5-10 post therapy) were evaluated using a 10% non-inferiority margin.

40.     In response to the Company's February 13, 2018 announcement, which was made after the close of the market, the price of Tetraphase stock fell dramatically. On February 14, 2018, Tetraphase stock fell from its previous close of $5.43 per share to as low as $2.10 per share before closing at $2.15 on volume exceeding 16 million shares traded (average daily trading volume for the preceding 30 days was 461,060 shares).

41.     On March 6, 2018, Tetraphase reported financial results for the fourth quarter and year ended December 31, 2017. The March 6, 2018 press release stated that given the results of the IGNITE3 study, the Company does not plan to further evaluate eravacycline in cUTI and has ceased its development of an oral formulation of eravacycline for the treatment of cUTI.

## VII.   NO SAFE HARBOR

42.     Tetraphase's "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. Because most of the false and misleading statements related to existing facts or conditions, the Safe Harbor has no applicability. To the extent that known trends should have been included in the Company's financial reports prepared in accordance with GAAP, they are excluded from the protection of the statutory Safe Harbor. 15 U.S.C. §78u-5(b)(2)(A).

43.    The Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer and/or director of Tetraphase who knew that the FLS was false.  In addition, the FLS were contradicted by existing, undisclosed material facts that were required to be disclosed so that the FLS would not be misleading.  Finally most of the purported "Safe Harbor" warnings were themselves misleading because they warned of "risks" that had already materialized or failed to provide meaningful disclosures of the relevant risks.

## VIII.    ADDITIONAL SCIENTER ALLEGATIONS

44.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Tetraphase, their control over, and/or receipt of modification of Tetraphase's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Tetraphase, participated in the fraudulent scheme alleged herein.  In addition, the Defendants personally benefited from misleading the investment public, as Defendant Dumas sold nearly 50,000 shares of Tetraphase common stock during the Class Period, reaping $297,747 from his sales of the Company's stock.

IX.    **APPLICABILITY OF PRESUMPTION OF RELIANCE:**
       **FRAUD-ON-THE-MARKET DOCTRINE**

45.    At all relevant times, the market for Tetraphase common stock was an efficient market for the following reasons, among others:

(a)    Tetraphase stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    The Company had 51,629,987 shares outstanding as of March 2, 2018.  During the Class Period, on average, more than 730,000 shares of Tetraphase stock were traded on a daily basis, demonstrating a very active and broad market for Tetraphase stock and permitting a very strong presumption of an efficient market;

(c)    as a regulated issuer, Tetraphase filed periodic public reports with the SEC;

(d)    Tetraphase regularly communicated with public investors *via* established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services, the Internet and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)    Tetraphase was followed by many securities analysts who wrote reports that were distributed to the sales force and certain customers of their respective firms during the Class Period.  Each of these reports was publicly available and entered the public marketplace; and

(f)    unexpected material news about Tetraphase was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

46.    As a result of the foregoing, the market for Tetraphase common stock promptly digested current information regarding Tetraphase from publicly available sources and reflected such information in Tetraphase stock price.  Under these circumstances, all purchasers of Tetraphase common stock during the Class Period suffered similar injury through their purchase

16

of Tetraphase common stock at artificially inflated prices, and a presumption of reliance applies.

## X.   LOSS CAUSATION

47.     During the Class Period, as detailed herein, Defendants made false and misleading statements, and omitted material information, concerning Tetraphase's business fundamentals and financial prospects and engaged in a scheme to deceive the market.

48.     By artificially inflating and manipulating Tetraphase's stock price, Defendants deceived Plaintiff and the Class and caused them losses when the truth was revealed. Defendants' prior misrepresentations and fraudulent conduct became apparent to the market on February 13, 2018, causing Tetraphase's stock price to fall precipitously as the prior artificial inflation came out of the stock price.  As a result of their purchases of Tetraphase securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## XI.   CLASS ACTION ALLEGATIONS

49.     This is a class action on behalf of those who: a) acquired Tetraphase securities pursuant and/or traceable to the Company's false and/or misleading Registration Statement issued in connection with the Company's July 2017 SPO; and/or, b) acquired Tetraphase securities between March 8, 2017 and February 13, 2018, inclusive (the "Class").  Excluded from the Class are officers and directors of the Company as well as their families and the families of the Defendants.   Class members are so numerous that joinder of them is impracticable.

50.     Common questions of law and fact predominate and include whether Defendants: (a) violated the Exchange Act; (b) omitted and/or misrepresented material facts; (c) knew or recklessly disregarded that their statements were false; (d) artificially inflated the price of

Tetraphase common stock; and (e) the extent of and appropriate measure of damages.

51.     Plaintiff's claims are typical of those of the Class.  Prosecution of individual actions would create a risk of inconsistent adjudications.  Plaintiff will adequately protect the interests of the Class.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## XII.    FIRST CLAIM

### Violation of Section 11 of the Securities Act
### (Against All Defendants)

52.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

53.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

54.     The Registration Statement for the SPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

55.     Tetraphase is the registrant for the SPO.  The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

56.     As issuer of the shares, Tetraphase is strictly liable to Plaintiff and the Class for the misstatements and omissions.

57.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

58.     By reasons of the conduct herein alleged, each Section 11 Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

59.     Plaintiff acquired Tetraphase shares pursuant and/or traceable to the Registration Statement for the SPO.

60.     Plaintiff and the Class have sustained damages.  The value of Tetraphase common stock has declined substantially subsequent to and due to the Defendants' violations.

## XIII.    SECOND CLAIM

### Violation of Section 15 of the Securities Act
### <u>(Against the Individual Defendants)</u>

61.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

62.     This count is asserted against the Section 11 Individual Defendants and is based upon Section 15 of the Securities Act.

63.     The Section 11 Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Tetraphase within the meaning of Section 15 of the Securities Act.  The Section 11 Individual Defendants had the power and influence and exercised the same to cause Tetraphase to engage in the acts described herein.

64.     The Section 11 Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

65.     By virtue of the conduct alleged herein, the Section 11 Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## XIV.    THIRD CLAIM

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5
### (Against Tetraphase and the Individual Defendants)

66.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

67.     Throughout the Class Period, Defendants Tetraphase and the Individual Defendants, in pursuit of their scheme and continuous course of conduct to inflate the market price of Tetraphase common stock, had the ultimate authority for making, and knowingly or recklessly made, materially false or misleading statements or failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

68.     During the Class Period, Defendants Tetraphase and the Individual Defendants, and each of them, carried out a plan, scheme, and course of conduct using the instrumentalities of interstate commerce and the mails, which was intended to and, throughout the Class Period did: (a) artificially inflate and maintain the market price of Tetraphase common stock; (b) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (c) cause Plaintiff and other members of the Class to purchase Tetraphase common stock at inflated prices; and (d) cause them losses when the truth was revealed.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants Tetraphase and the Individual Defendants, and each of them, took the actions set forth herein, in violation of §10(b) of the Exchange Act and Rule 10b-5, 17 C.F.R. §240.10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

69.     In addition to the duties of full disclosure imposed on Defendants Tetraphase and the Individual Defendants as a result of their affirmative false and misleading statements to the

20

investing public, these Defendants had a duty to promptly disseminate truthful information with respect to Tetraphase's operations and performance that would be material to investors in compliance with the integrated disclosure provisions of the SEC, including with respect to the Company's revenue and earnings trends, so that the market price of the Company's securities would be based on truthful, complete and accurate information. SEC Regulations S-X (17 C.F.R. §210.01, *et seq.*) and S-K (17 C.F.R. §229.10, *et seq.*).

70.    Defendants Tetraphase and the Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and disclose such facts, even though such facts were either known or readily available to them.

71.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts as set forth above, the market price of Tetraphase common stock was artificially inflated during the Class Period. In ignorance of the fact that the market price of Tetraphase common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made knowingly or with deliberate recklessness by Defendants Tetraphase and the Individual Defendants, or upon the integrity of the market in which the shares traded, Plaintiff and other members of the Class purchased Tetraphase stock during the Class Period at artificially high prices and, when the truth was revealed, were damaged thereby.

72.    Had Plaintiff and the other members of the Class and the marketplace known of the true facts, which were knowingly or recklessly concealed by Defendants Tetraphase and the Individual Defendants, Plaintiff and the other members of the Class would not have purchased or otherwise acquired their Tetraphase shares during the Class Period, or if they had acquired such

shares during the Class Period, they would not have done so at the artificially inflated prices which they paid.

73.     By virtue of the foregoing, Defendants Tetraphase and the Individual Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  17 C.F.R. §240.10-5.

## XV.   FOURTH CLAIM

### Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

74.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

75.     The Individual Defendants had control over Tetraphase and made the material false and misleading statements and omissions on behalf of Tetraphase within the meaning of §20(a) of the Exchange Act as alleged herein.  By virtue of their controlling shareholder status, executive positions, board membership, and stock ownership, as alleged above, the Individual Defendants had the power to influence and control and did, directly or indirectly, influence and control the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends were false and misleading.   The Individual Defendants were provided with or had unlimited access to the Company's internal reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause them to be corrected.

76.     In particular, the Individual Defendants had direct involvement in and responsibility over the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities

violations as alleged herein.

77.    By reason of such wrongful conduct, each of the Individual Defendants is liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## XVI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of the Class, prays for judgment as follows:

A.    Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Awarding such other and further relief as the Court may deem just and proper.

## XVII.    JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 27, 2018                     **GLANCY PRONGAY & MURRAY LLP**

By:   _s/ Lesley F. Portnoy_____
Lesley F. Portnoy (LP-1941)
230 Park Avenue, Suite 530
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com

-and-

Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**HOLZER & HOLZER, LLC**
COREY D. HOLZER
MARSHALL P. DEES
1200 Ashwood Parkway, Suite 410
Atlanta. GA  30338
Telephone: 770/392-0090
770/392-0029 (fax)

*Counsel for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.  I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
|---|---|---|---|
| TTPH | 10/04/2017 | 2000 | $7.38 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
|---|---|---|---|
| TTPH | | | |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

None

  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

  I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___26___ day of ___July___, 2018 in ___Bremerton___, ___Washington___.

                City       State

(Signature) X _____

DocuSigned by:

*Edward Garity*

FF77BD24FB734CA...

(Print Name) _____Edward Garity_____